UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN A. ROCCHIO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-00417-JRS-TAB |
| ) | |
| E&B PAVING, LLC, ) | |
| INTERNATIONAL UNION OF ) | |
| OPERATING ENGINEERS LOCAL 103, ) | |
| ) | |
| Defendants. ) | |

**Order on Motion for Summary Judgment**

In the summer of 2019, E&B Paving, LLC ("E&B") asked one of its engineers, Plaintiff John A. Rocchio, to take a random drug test. Mr. Rocchio tested positive for marijuana. This violated E&B's drug policy. Because of this positive drug test, E&B terminated Mr. Rocchio.

Mr. Rocchio alleges that E&B breached the collective bargaining agreement that was in place, that his union, International Union of Operating Engineers Local 103 ("the Union"), breached its duty of fair representation, and that both Defendants violated the Americans with Disabilities Act ("ADA"). Both E&B and the Union have moved for summary judgment. (Union Mot. Summ. J., ECF No. 47; E&B Mot. Summ. J., ECF No. 49.) Mr. Rocchio filed a response, (Pl.'s Resp., ECF No. 52), and Defendants replied, (Union Reply, ECF No. 58; E&B Reply, ECF No. 57). For the following reasons, the Court **grants** Defendants' motions.

1

## I. Background

E&B requires all employees to submit to random drug testing under the company's drug testing policy. (Dep. Ex. 3 1–3, ECF No. 47-10.) Employees are tested for a variety of prohibited substances, including marijuana. (*Id.* at 4.) If an employee tests positive for marijuana, the employee is immediately terminated. (*Id.* at 5.)

On July 9, 2019, E&B's third-party drug test administrator scheduled Mr. Rocchio for a random drug test. (Dep. Ex. 21 2, ECF No. 47-11; Dep. Ex. 10 4, ECF No. 47-12; Geary Dep. Tr. 46–47, 64–65, ECF No. 49-4.) The test revealed marijuana metabolites in Mr. Rocchio's system. (Dep. Ex. 21 2, ECF No. 47-11.) The third-party administrator notified E&B that Mr. Rocchio tested positive for marijuana. (Geary Dep. Tr. 39, 63–66, ECF No. 49-4; Dep. Ex. 10 2, ECF No. 47-12.) As a result, E&B terminated Mr. Rocchio's employment. (Rocchio Dep. Tr. 102–03, ECF No. 47-1.) Mr. Rocchio maintains that his positive test result was due to CBD oil—also known as cannabinoid oil, a legally sold hemp extract. (*Id.* at 98.)

Following his termination, Mr. Rocchio met with Union officials to see if he could be reinstated to his position at E&B. (Lodge Dep. Tr. 41, 52–53, 58, 64, ECF No. 47-8; Dep. Ex. 29 5–6, ECF No. 51-24.) Mr. Rocchio ultimately concluded that he wanted to file a grievance against E&B. (Lodge Dep. Tr. 58, ECF No. 47-8.)

E&B has a collective bargaining agreement ("CBA") with the Union that outlines the grievance process. (Dep. Ex. 1 12–13, ECF No. 47-3.) One way members can file a grievance is by bringing it to the Union. (*Id.*) According to the Union's bylaws, if a member brings a grievance to the Union, the Union's business manager has

2

discretion on whether to pursue the grievance.  (Ballard Decl. 19, ECF No. 47-5 ("The Union through its Business Manager may decline to process any such grievance . . . .").)  If the Union's business manager elects not to pursue a grievance, the grieving member can appeal the decision to the Union's five-member executive board.  (*Id.*)  Alternatively, the grieving member can present an individual grievance.  (ECF No. 49-8 at 14.)

Around September 4, 2019, Mr. Rocchio submitted his grievance to the Union.  (Rocchio Dep. Tr. 192, ECF No. 51-1.)  On September 6, 2019, Mr. Rocchio met with the Union's business manager, John Ballard, and two other Union business agents.  (*Id.* at 302–03.)  Mr. Ballard is a member of the Union's executive board.  (Ballard Decl. ¶ 4, ECF No. 47-5.)  The two business agents at the meeting were not members of the executive board.  (*See id.*)  Mr. Rocchio says that during the meeting, Mr. Ballard and the business agents were dismissive of his grievance, told him that they were not interested in results from additional drug tests Mr. Rocchio took following his termination, said that he could have made up those results and that he was lying about the information, and informed him that they could not do anything without a negative result from the "split sample"—that is, the control sample from Mr. Rocchio's July 9 drug test—and that if the sample came back positive, "there wasn't anything that they could do."  (*See* Rocchio Dep. Tr. 305–07, 314, ECF No. 51-1; Geary Dep. Tr. 73, ECF No. 47-9; Lodge Decl. ¶ 6, ECF No. 47-7.)  Ultimately, the grievance was not filed, either by Mr. Rocchio or by Mr. Ballard, (Rocchio Dep. Tr. 132, ECF No.

3

49-7), and Mr. Rocchio did not appeal Mr. Ballard's decision not to file a grievance, (Ballard Decl. ¶ 17, ECF No. 47-5).

## II. Legal Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court must construe all facts and any reasonable inferences arising from them in favor of the non-movant. *See Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (citation omitted).

## III. Discussion

A. Hybrid Section 301 Claims

Mr. Rocchio claims that E&B violated the CBA and that the Union breached its duty of fair representation. (Am. Compl. ¶¶ 47–62, ECF No. 33; Pl.'s Statement of Claims 1–2, ECF No. 44.) A suit against an employer for breach of the CBA proceeds under § 301 of the Labor Management Relations Act ("LMRA"), and the suit against the union for breach of the duty of fair representation is implied under the National Labor Relations Act. *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164–65 (1983). A union member's suit against both the employer and the union is referred to as a hybrid Section 301 claim. *See Pantoja v. Holland Motor Exp., Inc.*,

4

965 F.2d 323, 327 (7th Cir. 1992). Hybrid Section 301 claims are interdependent; i.e., to succeed against either Defendant, Mr. Rocchio must succeed on both claims. *DelCostello*, 462 U.S. at 165; *see also Rupcich v. United Food & Com. Workers Int'l Union*, 833 F.3d 847, 853 (7th Cir. 2016) (quoting *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 (7th Cir. 1997)) ("If one claim fails, 'neither claim is viable.'").

Before a plaintiff can bring a hybrid Section 301 claim, they must exhaust their internal union remedies. *Bell v. DaimlerChrysler Corp.*, 547 F.3d 796, 805 (7th Cir. 2008) (citing *Arnold v. United Mine Workers of Am.*, 293 F.3d 977, 979 (7th Cir. 2002)). Mr. Rocchio does not dispute that he failed to exhaust his internal remedies. However, he argues that his failure should be excused because Union officials were so hostile to him that he could not hope to obtain a fair hearing on his claim. (Pl.'s Resp. 32–33, ECF No. 52.) Courts have the discretion to excuse exhaustion in such a scenario. *Clayton v. UAW*, 451 U.S. 679, 689 (1981).

However, the hostility Mr. Rocchio cites is not sufficient to excuse a failure to exhaust. First, even assuming Mr. Ballard was dismissive of Mr. Rocchio's grievance, accused him of lying, and said there was nothing he could do if the split sample came back positive, it is not clear that this amounts to "pervasive hostility." *Bell*, 547 F.3d at 809 (rejecting plaintiffs' argument that comments that their grievances were a "dead issue" and that no further action would be taken on them were sufficient to show hostility; noting that the court has "repeatedly rejected statements" along those lines as insufficient to show pervasive hostility); *see also Miller v. Gen. Motors Corp.*,

5

675 F.2d 146, 150–51 (7th Cir. 1982) (futility not shown where local union official who withdrew plaintiff's grievance told plaintiff that even if the grievance were reinstated on appeal, the official would simply withdraw it again).  But even if this conduct does amount to hostility, Mr. Rocchio's argument still fails because he has only produced evidence of hostility from Mr. Ballard, who was just one member of the five-member internal appeals board.  "[T]he presence of one potentially hostile member on the [appeals board] does not, without more, demonstrate hostility so pervasive that the plaintiff[] could not hope to receive a fair hearing on their claim." *Arnold*, 293 F.3d at 981.  While *Arnold* involved an eleven-member board, the Court sees no reason the five-member board here requires a different outcome.  Mr. Rocchio has not distinguished *Arnold* or produced evidence of hostility by the other members of the executive board.  *See also Hammer v. UAW*, 178 F.3d 856, 858 (7th Cir. 1999) ("a plaintiff must show that union hostility is so pervasive that it infects every step of the internal appeals process").  Thus, even if Mr. Ballard was hostile to Mr. Rocchio, that is insufficient to excuse Mr. Rocchio's failure to exhaust.

Further, Mr. Rocchio's lack of knowledge as to his rights to appeal to the executive board or to file an individual grievance is not an excuse.  *Bell*, 547 F.3d at 808 (citing *Hammer*, 178 F.3d at 858–59) ("[T]he general rule is that ignorance of one's internal union remedies does not excuse the failure to pursue such remedies before bringing suit."). Mr. Rocchio responds that the Union did not advise him of his right to appeal to the executive board, and he did not have a copy of the bylaws, which described this right.  (Pl.'s Resp. 33–34, ECF No. 52.)  But it is his responsibility to be aware of the

6

Union's appeals procedures, and not having a copy of the bylaws is no excuse either. *Bell*, 574 F.3d at 808–09 ("[U]nion members have an obligation of diligence in ascertaining what avenues of relief are available to them within the union."); *Lewis v. Local Union No. 100 of Laborers' Int'l Union of N.A.*, 750 F.2d 1368, 1381 (7th Cir. 1984) (union's failure to provide plaintiff with copies of union constitution and collective bargaining agreement did not excuse plaintiff from exhausting intra-union remedies). Moreover, Mr. Rocchio had access to and a copy of the CBA, (Rocchio Dep. Tr. 37–40, ECF No. 49-7), and while the CBA does not explicitly provide step-by-step instructions on how to file an individual grievance, (Pl.'s Resp. 33, ECF No. 52), it states that employees may pursue an individual grievance, (ECF No. 49-8 at 14). In short, Mr. Rocchio has not presented any justification sufficient for the Court to excuse his failure to exhaust internal remedies. Therefore, Defendants are entitled to summary judgment on the Section 301 claims on this ground alone. *See, e.g.*, *Rupcich*, 833 F.3d at 859–60 (district court did not err by failing to address breach of CBA claim in a hybrid 301 action when it determined plaintiff did not have an actionable claim against the union for breach of duty of fair representation); *Horton v. Caterpillar, Inc.*, 974 F.2d 1340 (1992) (unpublished) (affirming grant of summary judgment in favor of union and employer solely on grounds that employee did not exhaust internal union remedies).

### B. ADA Claims

Mr. Rocchio also argues that the Union and E&B violated the ADA when they terminated and failed to rehire him. The ADA prohibits discrimination "against a

7

qualified individual on the basis of disability." 42 U.S.C. § 12112(a).  One need not actually be disabled to pursue a claim under the ADA; a plaintiff can proceed under a theory that they were "regarded as" having a disability.  42 U.S.C. § 12102(1).  To do so, the plaintiff must show that they were discriminated against "because of an actual or perceived physical or mental impairment."  42 U.S.C. § 12102(3)(A).  In a disability discrimination case, the "ultimate question" is "[w]hether a reasonable jury could conclude that [the plaintiff] would have kept his job if he [was not disabled], and everything else had remained the same."  *Graham v. Arctic Zone Iceplex, LLC*, 930 F.3d 926, 929 (7th Cir. 2019) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016)).

Even assuming that Mr. Rocchio can demonstrate that he was a "qualified individual" with a disability, no reasonable jury could find that he was terminated because of a perceived impairment and not because of the positive drug test.  As Mr. Rocchio states in his brief, "[a]ll parties agree that his positive drug test result was the reason" for his termination.  (Pl.'s Resp. 21, ECF No. 52 (citing Rocchio Dep. Tr. 98–100, ECF No. 51-1).)  Mr. Rocchio tested positive for marijuana metabolites; the third-party administrator relayed that information to E&B; and E&B terminated Mr. Rocchio.  It is undisputed that Defendants had a no-tolerance policy for positive drug test results.  "[I]f an employer fires an employee because of the employee's unacceptable behavior, the fact that that behavior was precipitated by a mental illness does not present an issue under the Americans with Disabilities Act."  *Palmer v. Circuit Ct. of Cook Cnty.*, 117 F.3d 351, 352 (7th Cir. 1997) (citations omitted).  A

contrary requirement "would place the employer on a razor's edge—in jeopardy of violating the Act if it fired such an employee, yet in jeopardy of being deemed negligent if it retained him and he hurt someone." *Id.*

Mr. Rocchio does not dispute that employers may prohibit the illegal use of drugs, as Defendants did here. (Pl.'s Resp. 21, ECF No. 35 (citing 42 U.S.C. § 12114(c)–(d)).) He argues, however, that because the ADA explicitly permits covered entities to prohibit the use of illegal drugs and to test for the use of illegal drugs, 42 U.S.C. § 12114(c)–(d), but does not explicitly permit bans of *legal* drugs or testing for *legal* drugs, it follows that "it violates the ADA" if an entity takes an adverse action against an employee who tests positive from the use of CBD oil, a legal substance. (Pl.'s Resp. 21, ECF No. 52.) He notes that Defendants cannot cite any authority that an entity "may ban a legal substance, test for a legal substance, or terminate or fail to reinstate an employee who tests positive on a drug test after taking a legal substance." (Pl.'s Resp. 22, ECF No. 52.)

First, it does not follow that the ADA's lack of explicit permission for entities to ban legal substances means it violates the ADA for entities to do so. *See, e.g.*, *Kier v. Com. Union Ins. Cos.*, 808 F.2d 1254, 1259 (7th Cir. 1987) ("An employer can fire an employee for any reason, fair or unfair, so long as the decision to terminate is not based on age or some other protected category."). Regardless, this argument fails for another reason: there is no evidence that E&B *knew* the positive test result was due to CBD oil and not marijuana at the time it terminated Mr. Rocchio. While Mr. Rocchio informed the third-party administrator that he did not use marijuana but

9

used CBD oil, (Rocchio Dep. Tr. 98–100, ECF No. 47-1), there is no indication that the administrator relayed this to E&B. Rather, the report provided from the administrator to E&B states that the sample tested positive for "[m]arijuana," and that the "compound(s) confirmed to be present" have "no legal use" or that, if they were legal, Mr. Rocchio "could not provide a legitimate explanation for" their presence. (ECF No. 51-13 at 1.) Accordingly, based on the objective test results and nothing else, Defendants terminated Mr. Rocchio. *See, e.g.*, *Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 n.7 (2003) ("If [the employer] were truly unaware that such a disability existed, it would be impossible for her hiring decision to have been based, even in part, on respondent's disability. And, if no part of the hiring decision turned on respondent's status as disabled, he cannot, *ipso facto*, have been subject to disparate treatment."). That Mr. Rocchio later informed Defendants that the test result was due to CBD oil and not marijuana is immaterial. *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 505 (7th Cir. 2017) (quoting *Harper v. C.R. England, Inc.*, 687 F.3d 297, 311 (7th Cir. 2012)) ("In determining whether an employer's stated reason [for discharge] is pretextual, the question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge.").

Mr. Rocchio's only evidence of discrimination is his argument that Defendants' policy of terminating employees who test positive for drugs "categorically" "regards" them as users of illegal drugs and, because Defendants cite safety concerns as the rationale behind the policy, as having an impairment under the ADA. This alone is

insufficient to support a jury verdict that Mr. Rocchio was terminated because of any perceived disability. First, it does not follow that because Defendants have a drug testing policy for safety reasons, they automatically believe that every employee with a positive test result has an impairment under the ADA. Perhaps Defendants think *some* employees who test positive will have an impairment; perhaps they are simply unwilling to take the risk that even one employee will. But Mr. Rocchio must show that Defendants thought *he* had an impairment and terminated him accordingly, 42 U.S.C. § 12112 (prohibiting discrimination "against a qualified individual"); *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1740–41 (2020) (analyzing similar language in Title VII and rejecting idea that it requires courts "to consider the employer's treatment of groups rather than individuals;" the statute informs "that our focus should be on individuals, not groups"), and that inference is too speculative for the Court to draw based solely on Defendants' policy, *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008) (quoting *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004)) (inferences "that are supported by only speculation or conjecture will not defeat a summary judgment motion").

Second, an employer does not have to tolerate unacceptable behavior—and Defendants considered a positive drug test unacceptable—even when that behavior is precipitated by an employee's disability. *Palmer*, 117 F.3d at 352; *see also Felix v. Wis. Dep't of Transp.*, 828 F.3d 560, 568 (7th Cir. 2016) ("the [unacceptable] behavior itself disqualifies [the employee] from continued employment and justifies her discharge").

Third, Mr. Rocchio lacks any other evidence to suggest discrimination. He cites comments from two people, including from one E&B employee, who said that they were sorry to hear about his drug addiction. (Rocchio Dep. Tr. 158–60, ECF No. 51-1.) Not only are those comments likely inadmissible hearsay, but they also do not suggest any discriminatory intent on Defendants' part. There is no link tying the initiation of those rumors back to Defendants, as opposed to a coworker who noticed Mr. Rocchio's absence and started to talk; indeed, Mr. Rocchio testified that these individuals found out about his test results through "word of mouth." (Rocchio Dep. Tr. 164, ECF No. 51-1); *Spitz v. Proven Winners N. Am., LLC,* 759 F.3d 724, 730 (7th Cir. 2014) (citing *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012)) ("[A]t the summary judgment phase, we make only reasonable inferences, not every conceivable one."). Mr. Rocchio was selected randomly for the drug test, not because of any perceived impairment—the third-party test administrator was the one who scheduled the test, not E&B. (Geary Dep. Tr. 46–47, ECF No. 49-4.) Finally, the person who received the test results and instructed that Mr. Rocchio be terminated, Melony Geary, testified that she does not "regard" employees as drug users. (Geary Dep. Tr. 65–66, ECF No. 49-4.) She said her decision was based solely on the positive test result and nothing else—the test result was "all [the information] she had." (*Id.*) Of course, the Court does not make credibility determinations at the summary judgment stage. But a dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In light of all the evidence,

no reasonable jury could find that Mr. Rocchio was terminated because of any perceived disability.

Mr. Rocchio's remaining arguments are largely policy appeals—"[a]n employee should not lose his job for consuming a legal product"—along with a warning that "[a] favorable ruling for Defendants due to the positive drug test alone would effectively cut off any potential ADA claims for employees who do not use an illegal substance[], but are terminated for a positive drug test." (Pl.'s Resp. 23, ECF No. 23.) But without any evidence from which a jury could reasonably infer that Defendants' actions were based on disability rather than the positive drug test, "any shortcomings in [Defendants'] handling of the situation"—for example, that they did not ask Mr. Rocchio for an explanation before terminating him, or that they did not care for his explanation when they heard it, or that they have not "explore[d] alternative solutions that would permit terminations for marijuana use (but not CBD oil use)," (Pl.'s Resp. 23, ECF No. 52)—"are not subject to redress within the confines of [Mr. Rocchio's] complaint." *Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 795 (7th Cir. 1997).

Mr. Rocchio's failure-to-rehire claim also fails. Mr. Rocchio testified that he was only interested in securing his former job and that he was not interested in working in another position or for another company. (Rocchio Dep. Tr. 308–09, ECF No. 51-1.) But Mr. Rocchio's former job was filled the day after his termination. (Evans Decl. ¶¶ 12–14, ECF No. 49-2.) Therefore, no reasonable jury could find that Mr. Rocchio was not rehired for his former position due to any perceived disability.

13

Accordingly, Defendants are entitled to summary judgment on Mr. Rocchio's ADA claims.

## IV. Conclusion

Defendants' Motions for Summary Judgment, (Union Mot. Summ. J., ECF No. 47; E&B Mot. Summ. J., ECF No. 49), are **granted.** The Clerk is directed to enter Judgment consistent with this Order.

**SO ORDERED.**

Date: __3/31/2022__

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution by CM/ECF to registered counsel of record